IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

### EASTERN DISTRICT.
## NEW-ORLEANS, DECEMBER, 1834.

---

### FOUCHER *vs.* HIS CREDITORS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

An absconding debtor cannot apply for the benefit of the insolvent laws and make a surrender of his property, by an *attorney in fact.* No man can swear by proxy, unless expressly authorised by law; and the attorney in fact cannot swear, that no part of the insolvent's property has been diverted to the injury of his creditors, which is essential in the affidavit.

The judge is not authorised to order a stay of proceedings, either against the person or property of an insolvent debtor, and to accept the cession, so as to bind all the creditors, without a compliance on the part of the insolvent debtor, with the *essential* forms of law.

A person's owning a saw-mill and brick-yard, as an appendage to a sugar plantation, and selling the bricks and plank, does not constitute him *a trader*, within the meaning of the 6th section, of the act of 1826, relating to forced surrenders of property.

54

This suit was instituted in the name of the plaintiff, by his attorney *in fact,* to obtain the benefit of the insolvent laws, relative to a voluntary surrender. The petition states, that the plaintiff, Antoine Foucher, jr., is a resident of the parish of Jefferson, *but now absent,* and represented by E. Faures, his attorney in fact; that owing to bad crops, payment of heavy interest, and losses, he is unable to pay his debts; he annexes a schedule of his affairs, and prays leave to surrender his property to his creditors, that it be accepted, and all other proceedings against it be stayed.

The schedule was sworn to, by the attorney in fact, and the district judge accepted the cession of the property, ordered a meeting of the creditors before a notary, and that all proceedings against the property be stayed.

After this order was granted, a portion of the creditors of Foucher, presented a petition for a forced surrender of his property, under the 6th section of the act of 1826, alleging that he is a *merchant or trader,* who has absconded or concealed himself, to avoid the payment of his debts, and praying for a meeting of creditors, in pursuance of that act.

The petition was accompanied by a motion, to set aside the former proceedings, on the following grounds:

1. That the schedule and petition are not sworn to.

2. That the petitioner had absconded, before the granting of said order.

3. That the petitioner is a fraudulent debtor.

4. The property left by said insolvent, will not be sufficient to pay one-third of his debts.

5. That a cession of property cannot be made by an attorney in fact.

The facts proved are, that the plaintiff had absconded to avoid a criminal prosecution for forgery, and was absent at the time the application was made for a surrender; that he had a sugar plantation, and a small plantation adjoining to it, near the city of New-Orleans, on the latter of which, he had a sugar-mill, saw-mill and brick-yard, the produce of which,

consisting of sugar, plank and scantling, and bricks, he was in the habit of selling, either on his plantation or in the city.

The district judge was of opinion, that the circumstance of Foucher's having a steam saw-mill and brick-yard, in connexion with his sugar plantation, and selling planks and bricks, did not constitute him a *merchant or trader*, refused the application for a forced surrender. He also considered, that although Foucher was not himself entitled to the benefit of the insolvent law, yet a surrender of the property might be made, for the benefit of his creditors; and therefore overruled the motion to set aside the order accepting the surrender. The creditors appealed.

*Derbigny* for the plaintiff, in support of the surrender, contended, that if the insolvent debtor acted fraudulently, or was not himself entitled to the benefit of the insolvent laws, still his property surrendered, whatever might be his fate, remains the pledge of his creditors, and is to be distributed among them.

2. It is objected by the opposing creditors, that the schedule cannot be sworn to by the attorney in fact of the debtor. This objection can go no further, than to deprive the debtor of the personal advantages resulting from the surrender; but unless it is clearly shown that the agent, in ceding the property, has violated the law, or exceeded his authority, he has vested in the creditors all the rights of the debtor, to the property surrendered.

3. The property surrendered by the insolvent debtor, may be retained by his creditors, notwithstanding his bad faith.

4. If there is no express law authorising this proceeding, the cession must be maintained on general principles of equity; for in civil matters, when there is no express law, the judge is bound to proceed, and decide according to equity. *La. Code, article* 21.

*Rost*, for the opposing creditors, made the following points:

1. The judgment of the District Court is unsupported and unfounded in law, and ought to be reversed, and the application of the creditors for a forced surrender admitted.

2. The district judge should not have accepted the surrender, because the schedule was neither signed nor sworn to, by the ceding debtor, who had absconded.

3. The insolvent was a *trader*, within the meaning of the act of 1826, which authorises creditors to compel a forced surrender, such as that asked for in this case.

*Eustis,* on the same side.

1. There can be no possible danger to any interest, in construing the statute of 1826, as a remedial statute. It can only take effect on the absconding of the debtor, when he virtually abandons his property to his creditors.

2. The act of 1826 was enacted, to prevent the mischiefs of the old law, and to carry out and give effect to the principle, that the property of the debtor is the common pledge of his creditors, to divide justly and equally among all, the property derelict, and to ensure order and certainty in the distribution.

3. This law is made applicable to merchants and traders alone. The planter is attached to the state, and cultivates the soil, is the last to abandon it, and is but rarely effected by the vicissitudes of trade.

4. The words merchant and trader, are used in the insolvent act, as forming a part of our insolvent system. They are used in the sense they are understood, in insolvent or bankrupt laws; are technical terms, and used in a technical sense. "Terms of art, or technical terms and phrases, are to be interpreted according to their received meaning and acceptation with the learned, in the art or profession to which they refer." *La. Code, article* 15.

5. This is the case of an absconding debtor, who had on his plantation, saw-mills and a brick-yard. He bought rafts and lumber for his mills, and sold his planks and bricks in the country and city. Either of these branches of industry would constitute him a trader, in the legal sense. Even the business of brick-making, if carried on separately and independently, though it be combined with other pursuits, makes the party a *trader. Eden on Bankruptcy, p.* 5. *Cooke on Bankrupt Law,* 49.

6. By his saw-mills, Foucher became a trader. He bought <span style="float:right">EASTERN DIST.</span> lumber, converted it into plank, and sold it.   On this princi- *December*, 1834. ple, carpenters and shipwrights, purchasing the raw mate-   FOUCHER rials, and converting and manufacturing them into articles for *vs.* HIS CREDITORS. sale, were held to be traders.   *Eden on Bankruptcy, page* 8.

7. All persons buying the raw materials of trade, and selling them again under another form, or improved by man-ufacture, have always been held, under the English bankrupt laws, to be traders.   *Eden on Bankruptcy, p.* 9.   *Cooke,* 49.

8. The variety of the transactions of the debtor, as dis-closed in his bilan, shows that his affairs were more of a mercantile than an agricultural character.   12 *Martin,* 27.

*Bullard, J.,* delivered the opinion of the court.

In this case it appears, that the plaintiff Foucher, had, through the agency of an attorney in fact, offered to make a cession of his property, for the benefit of his creditors, and that the judge of the District Court accepted the surrender, ordered a meeting of the creditors, and a stay of all proceedings against the property only.

Certain creditors came forward, and moved the court to set aside the order, accepting the surrender, and for a meeting of creditors, on the following grounds:

1. That the petition and schedule are not sworn to.

2. That the petitioner had absconded, before the granting of said order.

3. That the petitioner is a fraudulent debtor.

4. That the property left by said insolvent, will not be sufficient to pay one-third of his debts.

5. That a cession of property cannot be made by an attorney in fact.

The District court maintained its first order, and the opposing creditors appealed.

The act of 1817, relative to the voluntary surrender of property, requires that the debtor, who wishes to avail himself of its benefit, should present his petition, and annex to it a statement of his affairs, and the losses he has sustained, the names of his creditors, and a statement of all his property.

EASTERN DIST.
December, 1834.

FOUCHER
vs.
HIS CREDITORS.

This schedule must be signed by the debtor, if he can write, and sworn to or affirmed. The fifth section gives the form of the oath to be taken : among other things, he is required to swear, that " he has neither directly nor indirectly, diverted any of his property, to the injury of his creditors." By the act supplementary to that above mentioned, approved March 29th, 1826, the judge, to whom such petition has been presented, in the mode and form required by the original act, is authorised to accept the cession of property.

An absconding debtor cannot apply for the benefit of the insolvent law, and make a surrender of his property, by an attorney in fact. No man can swear by proxy, unless expressly authorised by law ; and the attorney in fact cannot swear, that no part of the insolvent's property has been diverted to the injury of the creditors, which is essential in the affidavit.

It appears to us clear, that unless the debtor complies with all the preliminary formalities required by these statutes, the judge is without authority, either to order proceedings to be stayed, or to accept the surrender. No man can swear by proxy, unless expressly authorised by law, and even if he could, an essential part of the affidavit has been omitted, to wit, that no part of the property of the debtor, has been diverted to the injury of his creditors. An absconding debtor might, without much violence, be presumed to have carried off some means with him. Whether he absconded to avoid the payment of his debts, or the punishment demanded by law for his crimes, is not material.

But it is said, that although Foucher may not be entitled to his discharge, under the insolvent laws, yet he may make a surrender to his creditors, for their common benefit, by his attorney in fact; he may surrender to them their common pledge, and that they may go on and administer it. This may be true, if the creditors all consent. But this opposition shows the dissent of a part of them ; and the question is, has the district judge a right, under such circumstances, to accept the surrender for all the creditors, and to restrain them in the prosecution of the claims against the common debtor ? We are of opinion, that the judge had not authority to order a stay of proceedings, either against the person or property, and to accept the cession, so as to bind all the creditors, without a compliance on the part of the insolvent, with the essential forms of law. It is true, the property of the debtor is the common pledge of his creditors, but it does not follow, that one creditor has a right to interfere in all cases, in the

The judge is not authorised to order a stay of proceedings, either against the person or property, of an insolvent debtor ; and to accept the cession, so as to bind all the creditors, without a compliance on the part of the insolvent debtor, with the essential forms of law.

pursuit of another, to be paid out of the common fund. The law favors the vigilant, by giving to recorded judgments the rank of mortgage; and one creditor could not restrain another from proceeding to judgment, against their common debtor, under the pretext, that he would thereby obtain a preference.

The opposing creditors further asked from the court of the first instance, a sequestration of the property of Foucher, as an absconding merchant or trader, under the sixth section of the above mentioned act, of 1826. This was refused, on the ground, that the absconding debtor is not a merchant or trader. The correctness of this judgment, is also contested on the appeal.

In the year 1823, the legislature abolished the forced surrender, as it existed by the Spanish law, and restricted the right of compelling a surrender, to cases when the debtor should be in actual custody.

The act of 1826, reinstated it only in relation to merchants or traders, who should abscond or conceal themselves, in order to avoid the payment of their debts. The principal question is one of fact, is Foucher a merchant or trader, according to the true intent and meaning of the statute? The statement of facts shows, that he has a plantation at a small distance above the city of New-Orleans, where he resided; that he has thereon a sugar-mill, a great quantity of cane, and also a steam saw-mill, a water saw-mill, and a brick-yard; the sugar, lumber, and brick were sold, either on the plantation, or in the city; and that he bought rafts for said saw-mills.

It is extremely questionable, whether even under the bankrupt laws of England, Foucher would be considered as a trader, within the statutes. One authority says, "a man's buying and selling, brings him not within the statutes, for they intend, such as gain the greatest part of their living thereby." *Bacon's Abr. verbo Bankrupt.* No very precise rule, has been laid down in England. But in this state, we are to take words in their usual sense. It seems to us, that having a saw-mill and brick-yard, as an appendage to a sugar plantation, and selling the brick or plank, does not

*A person's owning a saw-mill and brick-yard, as an appendage to a sugar plantation, and selling the bricks and plank, does not constitute him a trader, within the meaning of the 6th section of the act of 1826, relating to forced surrenders of property.*

constitute the proprietor a trader. No man perhaps ever imagined, before the absconding of Foucher, that he was a merchant or trader; and if we make one of him now, it can be done only by implication. It is impossible to say where we are to stop, if we once deviate from the broad distinction, obvious to common sense, between a planter, who profits by the labor of his slaves, and his own industry, partly in raising crops, and partly in some mechanical or manufacturing branch of industry, and the merchant or trader, who lives by buying, and selling for a gain. In the first case, it is principally labor, which affords the profit; in the second, it is capital invested and kept in circulation, without adding any value to the articles bought and sold. We think the judge did not err, in refusing the sequestration.

But it is said, if neither of these modes of proceeding is sanctioned by law, the parties are without remedy, and the property will be wasted by protracted litigation, among the creditors, and unequally distributed. We cannot help that. It is not our business to legislate, nor to remedy defective enactments of the legislature. Our judgments ought to form rather the development, than the supplement of legislation.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be reversed, so far as relates to the original order, and that the order of the court, accepting the surrender, and directing a stay of proceedings and a meeting of the creditors, be rescinded and annulled, and that the appellee pay the costs of both courts.