EASTERN DIST.
December, 1834.

GOTTSCHALK
vs.
HER CREDITORS.

MADAME GOTTSCHALK vs. HER CREDITORS.

APPEAL FROM THE PARISH COURT FOR THE CITY AND PARISH OF
NEW-ORLEANS.

A married woman, separated in property from her husband, and who is not even a public trader or merchant, has the right to claim the benefit of the insolvent laws, which authorise a cession of property, for the benefit of creditors, by a debtor in embarrassed and insolvent circumstances.

The plaintiff alleges, she is separated in property from her husband, and that owing to many losses, and diminution in the value of her property, she is unable to pay all her debts. She annexes a schedule of her affairs, and prays that she be allowed to make a cession of her property, for the benefit of her creditors, and a meeting of them be called; and that all proceedings against her person and property, in the mean time, be stayed.

The schedule was sworn to, and the usual affidavit made. The judge accepted the surrender. Abat and Delachaise, who were judgment creditors, appealed.

*Rouwert*, for the plaintiff, contended:

1. That by the first and second sections, of the act of February 20th, 1817, and by the first and second sections, of the act of March 29th, 1826, every individual, every insolvent debtor, not imprisoned for debt, can avail himself of the benefit of said acts, that in no part of said acts, is there any exception, express or implied, which excludes free women, who are not public trading women, from the benefit of said acts.

2. That by the fortieth section, of the act of 1817, it is expressly declared, that "no free girl or woman shall be imprisoned for debt, nor in virtue of this act, unless she be a public trading woman, or in consequence of some crime or misdemeanor," which express exception in favor of women,

not public trading women, liberating them from a part of the <span>EASTERN DIST.</span> provisions of said act, clearly shows that the balance of said <span>December, 1834.</span> act, is fully applicable to them, and that they have the right <span>GOTTSCHALK</span> to receive the full benefit thereof. <span>vs.</span> <span>HER CREDITORS.</span>

*D. and J. Seghers*, for the appealing creditors:

1. Neither the provisions of the act of the 20th February, 1817, relative to the voluntary surrender of property, or the supplemental act thereto, of March 29, 1826, are applicable to women, unless they are public traders or merchants.

2. The fortieth section of the act of 1817, provides, that women cannot be imprisoned, and consequently they do not come within the meaning of the 1st, 2d, or 27th sections of said act, nor within the 1st section of the act of 1826.

3. Women cannot be subjected to the provisions of the 9th or 21st sections of the act of 1817, providing against fraud, or concealment of the person or property of the debtor from the creditors, and for punishing it.

4. The Spanish law, relating to a forced surrender, would have applied to this case, but these laws were repealed by legislative enactment, in 1823. See 2 *Moreau's Digest*, 436.

5. The laws of Rome and Spain, exempted women from imprisonment for debt. The same provision exists in France, except as to women who are public traders. *Novelle*, 134, *ch. 9. Merlin's Repertoire, verbo contrainte par corps, No. 1 and* 16. *Law of Toro*, 62. *Febrero ad., part 2, b. 3, ch. 2, No.* 160.

6. According to these laws, it will appear, that the sole object of the judicial surrender, being to liberate the debtor from imprisonment, this privilege does not apply to women. *Febrero ad., part 2, b. 3, ch. 3, No. 1 and 2. Leclerey, droit Romain comparé au droit Français, vol. 4, p.* 144, 371.

*Mathews, J.*, delivered the opinion of the court.

The only question presented by this case, appears somewhat novel. It is, whether a woman, not a public trader or merchant, has a right to claim the benefit of our insolvent laws, which authorise a cession of property, for the

benefit of creditors, by a debtor who may find himself in embarrassing circumstances? This question was decided in the affirmative, by the court below, from which the opposing creditors took the present appeal.

The legislative acts of the state, which are the only laws in force, since 1828, on the subject now under consideration, make no distinction, as to the right of debtors to surrender their property, on the score of sex. But it is contended, on the part of the appellants, that in consequence of the humane and gallant disposition of our laws, which exempt women from imprisonment, on account of contracts, they are not entitled to the benefits secured to honest and unfortunate debtors, by a *cessio bonorum.*

Such interpretation, would certainly exhibit palpable discordance with that benevolent feeling, which dictated the rule, exempting women from personal arrest and imprisonment, on account of civil obligations, and unless the law be express and imperative in denying this right, it ought not to be so construed as to produce such an incongruous effect.

The reasoning in favor of the negative proposition, that women have no right, under our laws, to make a surrender of their property, for the benefit of their creditors, as used by the advocate in the present instance, is somewhat syllogistic in form. The insolvent laws, as shown by the 1st section of the act of the 20th March, 1817, and by the provisions of the act of 1826, on the same subject, were passed for the purpose of enabling debtors to avoid imprisonment, by surrendering their property, &c. A woman cannot be imprisoned, on account of her debts; therefore a woman has no right to make a surrender.

This mode of reasoning certainly receives aid from the maxim *cessante ratione cessat et ipsa lex*; and were it shown, that this is the sole benefit and relief intended by these laws, the reasoning would be very forcible, if not conclusive. But, on reading the section of the act referred to, the cession of goods has the effect, not only to prevent imprisonment, it also releases the debtor from all proceedings against his

person. This latter clause, if it have any meaning different from the exemption from imprisonment, must mean a release from all personal actions; so that a person, who does all things in his power to pay his creditors, by a fair surrender of property, may not be harrassed by a multiplicity of suits. This in truth, under circumstances of impossibility to make payment of all his debts, by a debtor, is the only means of giving effect to that provision of our code, which declares the property of a debtor to be a common pledge to all his creditors. The effects of a surrender of property, in practice, has always been, to stop all judicial proceedings against the ceding debtor, except such as are carried on in the *concurso.*

We are unable to perceive any cogency in the reasoning, based on the impossibility of punishing a woman, ceding her property as a debtor, by imprisonment, on account of fraud in the surrender. The same difficulty would exist, in making her act honestly, in pursuits by creditors separately, when she refused to make a cession of her property. Indeed, a willingness shown, to give all up for the benefit of the mass of creditors, is at least *prima facia* evidence of honesty and fair dealing.

The law does not positively and expressly inhibit women from surrendering their property to creditors, neither can such inhibition be made out, by just reasoning from the context of the law.

A married woman, separated in property from her husband, and who is not even a public trader or merchant, has the right to claim the benefit of the insolvent laws, which authorise a cession of property, for the benefit of creditors, by a debtor, in embarrassed and insolvent circumstances.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs, to be paid by the appellant.