JAMES JEFFRIES *v.* BELLEVILLE IRON WORKS COMPANY.

Where a creditor seeks to have annulled, as alleged, an order of court accepting a surrender of property by an insolvent, the proper method is to proceed by direct action in the same court which rendered the order contradictorily with the ceding debtor, and also with the creditors, by notice to the syndic elected by them.

A corporation created under the act for the organization of corporations for works of public improvements and utility, approved March 14th, 1855, cannot avail itself of the provisions of the act relative to the voluntary surrender of property, approved March 15th, 1855.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.

*W. J. Vason,* for plaintiff and appellant. *Benjamin, Bradford & Finney,* for defendants.

BUCHANAN, J. The plaintiff brought suit in the Fourth District Court of New Orleans, on the 10th of December, 1858, against the defendants, a private corporation established under the Act of 1855, p. 182, upon a promissory note of the defendants, for $3,202 44, signed by their President, payable to the order of, and endorsed in blank by, their Secretary, of which note plaintiff alleged himself to be holder and owner.

On the 29th of December, 1858, defendants made a voluntary surrender of their property in the Fourth District Court of New Orleans; the Judge of which court accepted the cession, and ordered a stay of proceedings and a meeting of their creditors, to take place on the 7th of February, 1859.

In the schedule filed with this petition, is found the name of "*J. Jeffries & Son,*" a firm of which plaintiff is admitted, in argument, to be a partner, inscribed as creditors of the Belleville Iron Works Company, by bills payable, for the sum of $9,788 59.

On the 18th of January, 1859, plaintiff instituted another suit in the same court against the defendants, as holder and owner of another promissory note, similarly made and endorsed, for $3,262 86, due December 31st, 1856.

In his petition in this latter suit, plaintiff charges "that he is advised, that on the 29th day of December last past, an *ex parte* order was granted by the Judge of this court, upon the petition of the defendant, praying to be allowed to make a voluntary cession of its assets to its creditors, staying all proceedings against the property of the said company. Petitioner respectfully insists that said order is illegal, and was improvidently granted by the Judge of this court, and should, therefore, be annulled and vacated for this; that corporations, such as the defendant in this case, have no right, under the laws of this State, to make a voluntary surrender of their property to their creditors, and receive the benefit of the insolvent laws of this State. And he prayed, that the order in question might be annulled, and for judgment upon the note.

On motion of plaintiff's attorney, *R. Wells,* the syndic elected at the meeting of creditors of defendants, was made a party to both of these suits. He, pleading the order of the 29th December, 1858, as an exception, prayed that these suits be cumulated with the insolvent proceedings of defendants. After hearing, the exception was sustained, the suits ordered to be cumulated, and, from this judgment, plaintiff appeals.

By consent of parties, the two cases have been brought up, and are to be decided in one appeal.

The question presented by this appeal is, whether a corporation created under the act for the organization of corporations for works of public improvement and utility, approved March 14th, 1855, can avail itself of the provisions of the Act relative to the voluntary surrender of property, approved March 15th, 1855.

On the part of the appellees, it is objected that this question has been collaterally raised, and cannot be examined in this form ; that it must be the subject of a proceeding in the suit of the *Belleville Iron Works Company* v. *Its Creditors.* This objection appears unfounded. The issue of the illegality of the order accepting the surrender of property, is made by a direct action in the same court which rendered that order, and contradictorily with the corporation, by citation served upon its President, as well as with the creditors of the corporation, by notice to the syndic elected by them. Of the two precedents cited in argument, in one, (*Gottschalk* v. *Her Creditors*, 7 La. 436,) an appeal was taken by two creditors from the order accepting the surrender ; and the other, (*Foucher* v. *Creditors*, 7 La. 425,) a motion was made to set aside that order, in a distinct suit, instituted by sundry creditors, for a sequestration of the absconding debtor's property. If there be any difference, the present would seem to be rather more formal than either of those cases.

Proceeding, then, to the consideration of the question above stated, we understand the counsel of appellees to maintain the right of a corporation to the benefit of the voluntary surrender of property Act, on the ground, that by the first section of that Act, it is said : " Any *person* may make a cession of his property to his creditors." And the counsel argues, that corporations constitute a class of *persons* in the Civil Code of Louisiana. He directs our attention particularly to Article 431 of the Code, in which corporations are designated *intellectual persons.*

We are of opinion, that the term *persons* in the first section of this Act of the Legislature, refers to *natural* persons alone ; and that it was not the intention of the lawgiver to include under that denomination, the artificial or legal person, which is the subject of the tenth title of the first book of the Civil Code. The Act relative to the voluntary surrender of property and mode of proceeding, approved 15th of March, 1855, is copied substantially, and in many of its sections, word for word, from the Act " relative to the voluntary surrender of property and to the mode of proceeding, as well as for the direction and for the disposal of debtor's estates, and for other purposes," approved February 20th, 1817, as amended by the Act of 29th of March, 1826, by that of March 13th, 1837, and by that of 28th of March, 1840. Bullard & Curry's Digest, pages 487, 495, 498 and 474.

Indeed there is scarcely any thing in the Act of 1855, which is not to be found in one or the other of the above mentioned Acts, except some provisions relative to syndics and their commissions. Yet, in the case of the *Commissioners of the Exchange Bank* v. *Mudge*, 6th Rob. 398, this court said : that no law existed previously to the year 1842, which defined the insolvency of a corporation, or provided for either its voluntary or forced liquidation.

It is manifest from this language, that our predecessors did not consider that a corporation was entitled to make a cession of property, under the insolvent laws then in force ; and which, as we have seen, were substantially the same with that under which the defendants made the application to the Fourth District Court, and obtained its order staying proceedings against them.

The first section of the Act of 1817, uses the word " individual." This word,

in the first section of the Act of 1855, has been changed into "person." But we have no reason to believe that, by this change, the Legislature intended to enlarge the object of the law to corporations. Nothing of that kind is intimated in *Mr. Phillips'* Report to the Legislature upon the Revision of the Statutes of the State.

The first section of the Act of 1817, reads, in entire, as follows :

" Every individual, who shall not yet have been imprisoned for debt, but who shall find himself unable to meet his engagements, may avoid imprisonment and all further proceedings against his person, for said debt, by surrendering all his estate to his creditors, provided the said surrender be made *bona fide* and without fraud, and agreeably to the formalities prescribed by this Act."

The corresponding section in the Act of 1855, reads :

" Any person may make a cession of his property to his creditors ; provided, the surrender be made *bona fide*, without fraud, and agreeably to the formalities prescribed hereafter."

This change of phraseology seems to have been rendered necessary, by the abolition, in the year 1840, of the writ of *capias ad satisfaciendum*, which, at the time of the passage of the earlier statute, was a mode of executing all money judgments, after the return of the *fieri facias*, " no property found."

To have preserved the identical words of the Act of 1817, in the Revised Statutes of 1855, would thus have been clearly inconsistent with the existing state of our legislation. The omission of a portion of the section of the original Act became, consequently, necessary ; and, in what remained, the substitution of the word *person* for that of *individual*, if not the result of accident, had evidently no other or further design than a fancied euphony or conciseness ; for the formalities required, by the same section, to be observed, and which are detailed in the subsequent sections of the revised, as well as the original statute, such as the taking and signing of an oath, are evidently such as could only be performed by natural persons.

Again : if we look into the Act under which the defendants are organized as a corporation, (Session Acts of 1855, page 182,) we find, in its sixth section, a peculiar kind of evidence required for the ascertainment of the fact of insolvency of corporations organized under that Act ; and, also, a peculiar form of liquidation prescribed in case of such insolvency. The section declares :

" That they shall forfeit their charter for insolvency, evidenced by a return of no property found on execution ; and, in such case, it shall be the duty of the District Court, at the instance of any creditor, to decree such forfeiture, and to appoint a Commissioner for effecting the liquidation, whose duty it shall be, to convert all the assets of the company, including any unpaid balances due by stockholders on their shares, into cash, and to distribute the same, under the direction of the court, amongst the parties entitled thereto, in the same manner, as near as may be, as is done in cases of insolvency of individuals."

It may be observed, *en passant*, that the concluding words of this section seem to negative the idea of the Act for the voluntary surrender of property being applicable to corporations, and being the language of a statute passed by the same Legislature, and almost on the same day with the Act which we examined in the first part of this opinion, has very much the appearance of a contemporaneous legislative interpretation of that Act, confirmatory of the views we have expressed.

Be that as it may, the section is the only one in the Act which treats of the

JEFFRIES
v.
B. IRON WORKS.

insolvency of corporations. It is highly important in this case, in two aspects : 1st. As a rule of evidence. 2d. As a rule of procedure.

Upon the first of these points, we feel bound to say, that the insolvency of the Belleville Iron Works Company, has not been legally shown.

Upon the second, that when the insolvency shall be evidenced according to law, the legal form of proceeding for the liquidation of their affairs in court, is different from that which has been adopted in this case.

In the form of procedure prescribed by the statute, the corporation would be defendant, instead of being, as we find them, in the form of proceeding which they have pursued, the plaintiff.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed ; that the exception filed by *Richard Wells*, in the capacity of syndic of the creditors of the defendants, be overruled ; and that these two causes, consolidated for the purposes of this appeal, be remanded to the court below, to be proceeded in according to law ; and that the appellees pay costs of appeal.