### THE RED WING.[*]

(*District Court, E. D. Missouri.* December 6, 1882.)

1. LIEN FOR SUPPLIES FURNISHED AT HOME PORT.

A party furnishing a vessel with supplies at its home port on credit is not entitled to an admiralty lien upon the vessel, except where a lien is given by a local statute.

2. ENFORCEMENT OF.

Where a state statute gives a lien for supplies furnished at a home port, a lien for supplies so furnished will be enforced by a court of admiralty, but only when it comes strictly within the terms of the statute.

3. TIME WITHIN WHICH LIEN MUST BE ENFORCED.

Where the state statute prescribes a time within which the lien must be enforced, if at all, the limitation will be recognized by the federal court.

4. WHERE VESSEL IS IN THE CUSTODY OF A STATE COURT.

Where, at the time a libel is filed against a vessel in a court of admiralty, the vessel is in the custody of a state court, the libelant cannot enforce his process by seizure until the custody of the state court ceases.

5. SAME—LIMITATIONS—EFFECT OF CUSTODY OF STATE COURT.

Where a lien for supplies furnished a vessel at its home port was, by the terms of the statute conferring it, only enforceable within nine months after the supplies were furnished, and the vessel to which they were furnished was during the whole of the prescribed period in the custody of a state court, *held*, that the fact of such custody did not enlarge or suspend the operation of the state statute.

In Admiralty.

*Given Campbell*, for libelant.

*James Taussig* and *George A. Madill*, for claimants.

TREAT, D. J. The libel is for supplies furnished in a home port. Under the state statute a lien existed therefor, to be enforced within nine months. More than nine months passed before the libel was filed. It appears that the defendant vessel was owned by a corpora-

[*]Reported by B. F. Rex, Esq., of the St. Louis bar.

tion, whose assets, including the vessel named, had passed into the custody of a receiver appointed by the state court soon after the demand accrued, and that immediately after such custody ceased this suit was instituted, although nine months had elapsed.

Under the decisions in the cases of *The Lottawanna* and *The Edith* this court must hold that supplies in a home port cannot be recognized in admiralty except in strict compliance with the terms of the local statute giving a lien therefor. As early as the case of *The Golden Gate* (1857) this court discussed the main propositions involved, supposing that the United States supreme court would depart from the narrow English rule followed in the case of *The Gen. Smith*. As that court had, in the case of *The Genessee Chief,* overruled the English doctrine as to tide-water, it was thought it would also overrule the equally-narrow English rule as to home supplies. It has, however, adhered to that narrow rule, and at the same time admitted as maritime demands, cognizable in admiralty, those arising in a home port where the local statute gives a lien therefor, and restricting those demands to the positive terms of the local statutes.

The argument in this case pursues the same line of reasoning often enunciated in this court, but which the United States supreme court has repudiated. It has often been stated in this and in the United States circuit court that the admiralty and maritime jurisdiction of the United States courts could not be enlarged or restricted by state enactments, and hence the latter should be disregarded. At the same time it was stated that supplies in the home port, independent of state statutes, were within federal cognizance. This latter ruling was based on grounds fully presented in the dissenting opinion of Justice CLIFFORD in *The Lottawanna Case,* 21 Wall. 558. The United States supreme court, however, has adopted a ruling to which all inferior courts must conform, no matter what difficulties or seeming injustice may follow. The present case furnishes an apt illustration of some of the difficulties. If the demand constituted a maritime lien enforceable in admiralty, independent of local enactments, then no action of a state court could divest the same. If, at the filing of the demand in the United States court, the vessel was in state custody, the libelant could not enforce his process by seizure, but the seizure could be made so soon as the state custody ceased. The rules of law in this respect have been long settled.

The apparent inconsistencies urged are that if the demand were a pure admiralty lien, as if for seamen's wages, it would override state process as to priority; but that as it is a demand with a lien declared

maritime merely through state statutes, the libelant is in a position where, if he pursues his remedy in the state court, it will be wholly inadequate, and if he resorts to the United States court, under the circumstances, interminable delays and expense will occur, or he will be barred by the limitations prescribed. The state statute recognizes as liens many demands which are not maritime, and if the state court enforces these demands, many of them which are not maritime within the ruling of the United States supreme court will be put on an equal footing with the maritime. If, on the other hand, the maritime lien, recognized only by force of the state statute, is pursued in the admiralty court, then the state statutes as to rules of distribution must be overridden. What, then, shall be the rule of action?

As the law has been pronounced by the supreme court concerning supplies in a home port, difficulties like those now presented may frequently occur. An effort to enforce libelant's demand in the state court would give him only a *pro rata* amount with many maritime demands; but his claim presented in the United States court would give him priority in right. Again: The state court, under the corporation act, had taken possession of all the assets of the corporation, including the defendant's vessels, and consequently such assets in the hands of its receiver were subject to existing maritime liens, and also to statutory liens. Which should dominate? Pure admiralty liens would override mortgages and liens merely statutory, but how stand lien demands which exist only by force of state statutes, yet recognized in *The Lottawanna Case* as maritime and enforceable in admiralty? It is impossible to avoid the difficulties presented, in the light of authoritative rulings. The state statutes do or do not affect the jurisdiction of admiralty courts. If they are to be received as operative, where is the dividing line? If operative only as to such liens created as are maritime in their nature, which, but for the state statute, would be discarded, how is it that a United States court acquires jurisdiction through a state statute alone, in admiralty, and then repudiates all that statute contains except what may be considered as maritime, cognizable in admiralty under the United States constitution and laws? The demand is or is not a maritime lien, cognizable in admiralty courts; yet the United States supreme court has held that resort can be had to state laws to eke out or give jurisdiction, which otherwise would not obtain.

Without attempting to solve the many difficulties resulting from the rejection of the true maritime rule as to home supplies, it must suffice to state that the case falls within the doctrines laid down in the

cases of *The Lottawanna* and *The Edith*. This suit was instituted for a maritime lien originally existing by force of the state statutes, which lien ceased at the expiration of the prescribed nine months. The fact that the lien could not have been previously enforced by seizure, in consequence of the custody of the state court, does not enlarge or suspend the operation of the state statute. The lien expired before the suit was brought.

The exceptions are sustained and the libel dismissed, at cost of libelant.

See, generally, *The De Smet*, 10 FED. REP. 483, and note, 489.