## THE BELLE OF THE COAST.

### AIKEN et al. v. WOODWARD et al

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

#### No. 413.

MARITIME LIENS—SUPPLIES TO DOMESTIC VESSELS—STATE STATUTES.

Where, pursuant to a written agreement with the agent of a packet company, life preservers were furnished in the home port, where all the parties resided, to vessels operated under a charter by that company, the furnishers having no knowledge as to the solvency or credit of the company, and the only inquiries made being to ascertain for what vessels the supplies were needed, *held*, that there was a lien on one of the vessels for the goods furnished and delivered to it, under the Louisiana statute giving a privilege on all vessels for supplies furnished to them. Rev. Civ. Code, art. 3237.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Geo. Denegre, for appellants.

O. B. Sansum, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BOAR-MAN, District Judge.

McCORMICK, Circuit Judge. In the early summer of 1893, Capt. John F. Aiken, the owner and master of the steamboat Belle of the Coast, united with Capt. E. J. Comeaux, the master and principal owner of the steamboat Mabel Comeaux, in forming the Comeaux-Aiken Packet Company, with the purpose of running an excursion line between New Orleans and some pleasure grounds a few miles up the river from the city. The two steamboats named were chartered by the new company. One other steamer was purchased, and two others were employed for one or more trips. To equip the boats for this work, it became necessary to furnish them with a large number of life preservers, for obtaining which negotiations were opened by the new company with the appellees, Woodward, Wight & Co., Limited, resulting in the following written agreement:

"Memorandum of agreement made and entered into on this 29th day of May, A. D. 1893, by and between the firm of Woodward, Wight & Co., Limited, of the first part, and Captain E. J. Comeaux, representing the Comeaux-Aiken Packet Company, of the second part: Witnesseth, the said Woodward, Wight & Co., Limited, have agreed to rent to the said Comeaux-Aiken Packet Co. three thousand life preservers, for a period of three months, at twelve and one-half cents (12½c.) each per month. At the expiration of the above three months, should the above named Comeaux-Aiken Packet Company decide to purchase the three thousand life preservers, they are to have the same at seventy-five cents (75c.) each; the 37½c. rental each for the three months they paid is to be applied to the purchase price, they only paying the balance of 37½c. each. It is further agreed that these life preservers are to be kept in the same perfect condition as when delivered to the above-named Comeaux-Aiken Packet Co.; they, the said Comeaux-Aiken Packet Co., keeping them insured for the benefit of Woodward, Wight & Co., L't'd, and assuming all responsibility or risk for loss or damage to the aforesaid three thousand life preservers. Should the Comeaux-Aiken Packet Co. decide not to keep the above-named life preservers for the period of three months, as above stipulated, they are to pay the full rental of 37½c. each, or take the life preservers at seventy-five cents (75c.) each, as above specified."

On this agreement the appellees furnished the Belle of the Coast, at different times, life preservers to the number of 1,505. There is a conflict in the testimony as to the number received by the Belle of the Coast, but the clear preponderance of the proof supports the charge in the libel as to the number furnished. The rest of the 3,000 contracted for were delivered to other boats of the Comeaux-Aiken Company line. The boats were domestic vessels, whose home port was New Orleans, where all the parties reside, and the transactions were had, but the local statute gives a privilege on all vessels for such supplies furnished the vessel. Rev. Civ. Code, art. 3237. The appellants claim that these supplies were not furnished the steamboat by the appellees, but were delivered to the Comeaux-Aiken Company, on its credit, in accordance with the contract above set out. It is claimed that the corporation then newly formed, as before stated, was amply solvent at that time; that when the bills for the life preservers were presented, and appeared to be made against the vessels, the proper officer of the corporation demanded that they should be changed, and rendered against the corporation,

which was done. The corporation became insolvent in a few months, and before making any considerable payment on the appellees' bills. As we view the proof, no part of it tends to show that Woodward, Wight & Co., Limited, had any knowledge as to the solvency and credit of the Comeaux-Aiken Packet Company at the time of the opening of the negotiations for the life preservers. The inquiries then made were clearly to ascertain for what vessels the supplies were needed. The supplies, as furnished, were charged to the vessel to which delivery was made. It was immaterial to appellees how they were afterwards distributed to or interchanged among the different packets of the line, and how the managing corporation kept its accounts with the different boats, or the form in which its vouchers from supply men were stated. We are of the opinion that the proof amply sustains the decree of the district court, and it is affirmed.