## WOODWARD, WIGHT & CO., Limited, v. DILLWORTH.[1]

### (Circuit Court of Appeals, Fifth Circuit. April 28, 1896.)

### No. 442.

SHIPPING—LIENS—LOUISIANA CODE—FORCED SALE.

The stockholders of the C. Packet Co., a Louisiana corporation, passed a resolution that the company should be dissolved and liquidated, and that certain persons should act as liquidators, who should be confirmed by the court. Thereupon, on petition of creditors, this resolution and the appointment of the liquidators were confirmed by the court. An order was made two days later that the liquidators should be authorized to run a steamer owned by the company, and that such steamer should be sold at auction, after advertisement by the sheriff. Thereafter the steamer, after due advertisement, was sold as directed. *Held* that, these proceedings being unknown to the law of Louisiana, and only recognized by the courts by virtue of the consent of the corporation, the sale so effected was, in legal effect, purely voluntary, and not being a forced sale, within the meaning of articles 3239 and 3240 of the Louisiana Code, did not divest the lien upon the steamer given by virtue of article 3237 of the same Code to one who had furnished her with supplies.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Woodward, Wight & Company, Limited, brought this suit against the steamboat Stella Wilds to recover the sum of $560.60, rent of 1,360 life preservers. They allege: That the Stella Wilds belonged to the Comeaux-Aiken Packet Company. which was carrying on the business of common carrier, and needed, at the least, 1,500 life preservers to complete its necessary equipment, under the laws of the United States, to carry a certain number of passengers. That on the 27th of May, 1893, libelants agreed with the Comeaux-Aiken Packet Company to provide and furnish 3,000 life preservers, to be delivered to and used upon the steamboats belonging to the Comeaux-Aiken Packet Company, the same to be rented at the rate of 37½ cents for each life preserver. which were to be returned to libelants: provided that, if the life preservers should be used for any time less than three months. the full sum of 37½ cents for each should be due and payable to libelants; reserving, however, to the Comeaux-Aiken Packet Company the right to purchase them by paying libelants for the same at the rate of 75 cents for each life preserver. That, in pursuance of said agreement, libelants delivered to the steamboat Stella Wilds a large number of life preservers, to wit, on June 10, 1893, 500 life preservers; June 17, 1893, 860 life preservers; making in all 1,360 life preservers, to be used on the Stella Wilds as part of her equipment. That the same were received by the master and officers of the steamboat for said purposes, and the said Comeaux-Aiken Packet Company became bound to pay libelants the sum of $510 as rent for the same; and. by the force and effect of the statutes of the state of Louisiana, the said sum of money, together with the sum of $50.60 expended and paid out by libelants for carrying said life preservers to and from said steamboat, became and was, and still is, a lien upon the Stella Wilds. The defense is that the libelants have no cause of action or claim against the Stella Wilds; that said steamboat was formerly the property of the Comeaux-Aiken Packet Company, a corporation created under the laws of Louisiana; that said Comeaux-Aiken Packet Company had been dissolved, and proceedings for the liquidation thereof had been taken, as provided by the laws of Louisiana, in the civil district court for the parish of Orleans. under the number 40,081 of the docket of said civil district court, in the suit entitled M. D. Lagan et al. v. The Comeaux-Aiken Packet Company; that under the proceedings had in said suit. and by the order of the civil district court, the Stella Wilds was sold

[1] Rehearing denied June 9, 1896.

at public auction, and respondent purchased the said Stella Wilds at the said sale, and became the owner, under and by virtue of the adjudication so made by the orders of the civil district court; that if libelants have any lien of any kind,—which is not admitted,—this being the home port of the Stella Wilds, such lien can only be claimed by virtue of some laws of the state of Louisiana, and that all liens given by or under the laws of Louisiana have been canceled and extinguished by the sale made as aforesaid by the honorable civil district court for the parish of Orleans, liens in such cases being referred to the proceeds of sale, the purchaser at said sale taking the title free from liens of any kind; that only 860 life preservers, altogether, were ever furnished to the Stella Wilds. The libelants offered evidence showing that they had delivered to the steamboat Stella Wilds 1,360 life preservers for use aboard said steamboat, for which they were entitled to charge, as per contract with the owners, the sum of 37½ cents for each and every of the same, and that for drayage of life preservers to and from the vessel the steamboat was indebted in the sum of $50.60, and otherwise tending to establish the allegations of the libel. The claimant offered evidence showing that after the supplies were furnished by the libelants, and before the filing of the libel·in this case, at a meeting of the stockholders of the Comeaux-Aiken Packet Company, owner of the steamboat Stella Wilds, held on the 17th day of August, 1893, in pursuance of a resolution of the board of directors, the following resolutions were passed:

"Whereas, the condition of the affairs of the Comeaux-Aiken Packet Company makes it necessary, in the interest of its creditors and stockholders, that it should cease business and go into liquidation: Be ·it resolved, that it is ·to the interest of the shareholders and creditors that this company shall·be dissolved, liquidated, and wound up, and that J. Vincent Le Blanc and W. J. Comeaux be chosen as such liquidators, with full power to sell and dispose of all the property and assets of this company, and take such other steps as may be necessary, proper, or convenient to effect such purpose, and fully settle and wind up this company, and distribute the proceeds of its assets. Resolved, further, that in order to secure a speedy and economical liquidation, and avoid all legal complications, it is the opinion of the stockholders that the commissioner this day elected shall be confirmed by the court, and that such steps be taken by the present officers of the company, or the aforesaid commissioner, as may be necessary, proper, or useful to effect said purposes."

Thereafter, on the 13th of September, 1893, the following petition was filed in the civil district court for the parish of Orleans:

"The petition of M. D. Lagan, L. Ruch & Son, and R. L. Robertson, of this city, respectfully shows that they are creditors, for more than $100, of the Comeaux-Aiken Packet Company, a corporation under the laws of this state, domiciled in this city; that said corporation has suspended payment, with a view of going into liquidation; .that the stockholders have met, and passed a resolution to liquidate and wind up the affairs of the company, and have appointed J. V. Le Blanc and W. J. Comeaux as liquidating commissioners, with full power to liquidate and wind up said company; that it is the wish of the stockholders that the liquidation should be made through said parties as commissioners. Petitioners further show that it is to the interest of all of the creditors and stockholders that a fair and economical liquidation be had, and, to that end, that the court confirm the appointment of the aforesaid commissioners, and appoint the same persons commissioners of liquidation and receivers of said company; such appointment and confirmation being within the equity powers of the court. Wherefore petitioners pray that the Comeaux-Aiken Packet Company be cited to appear and answer this petition; that this honorable court confirm the appointment of J. V. Le Blanc and W. J. Comeaux as liquidating commissioners of said company, and appoint said J. V. Le Blanc and W. J. Comeaux as liquidating commissioners and receivers of said company, with authority as such to liquidate and wind up the said company, sell and dispose of its assets, and do and perform all other acts and take such other steps as may be necessary, proper, or convenient to effect such purpose, and fully settle and wind up said company, and distribute the pro-

ceeds of its assets; and petitioners further pray that an inventory be taken by A. J. Villere, *notary public, and for all such other and further orders and relief as may be necessary or proper."*

That upon the same day the following order was made:

"Considering the foregoing petition, and the answer of the Comeaux-Aiken Packet Company, it is ordered that the affairs of said company be proceeded with by liquidation; that J. V. Le Blanc and W. J. Comeaux be confirmed as liquidating commissioners, and be, and they are hereby, appointed as liquidating commissioners, and confirmed as such, on taking oath as required by law. It is further ordered that an inventory be taken by A. J. Villere, notary public, and the bond be given by said commissioners to be fixed when the inventory is taken and filed. It is further ordered that a commission issue to the clerk of the district court of the parish of Jefferson to take an inventory of property in said parish.

"New Orleans, September 13th, 1893.

"[Signed]                                 T. C. W. Ellis, Judge,

"Sitting for Hon. N. H. Rightor, Judge of Div. D, now absent on leave."

That on the 15th day of September, 1893, the following order was made:

"Let W. J. Comeaux and J. V. Le Blanc, liquidating commissioners and receivers of the Comeaux-Aiken Packet Company, be, and they are, authorized to run the steamer Stella Wilds in the trade in which she is at present engaged, and for that purpose incur such expense and make such disbursements as are necessary, rendering a full account thereof, in due course, to this court; and let the said steamer Stella Wilds be sold at public auction, to the highest bidder, after the usual advertisements, by Victor Mauberet, civil sheriff of that parish.

"New Orleans, Sept. 15, 1893.

"[Signed]                                 T. C. W. Ellis,

"Judge of this Court, Div. A, acting for the Hon. N. H. Rightor, Judge Div. D, now absent on leave."

The evidence offered by claimant further showed that thereafter, under the last above mentioned order, the sheriff of the parish of Orleans, after advertisement for 30 days, offered for sale, sold and adjudicated the steamboat Stella Wilds to the claimant for the sum of $3,700. There was no evidence showing that the sheriff ever seized or possessed the said steamboat, and the fact appears to be that during all the time the proceedings and advertisement were pending the said steamboat was regularly and continuously run in her regular trade, for account of owner. The judge in the district court first decided in favor of the libelants for the full amount of their claim, $560.60, and thereafter, as the record shows, of his own motion, reconsidered his decree, and ordered a decree in favor of the claimant, dismissing the libel, with costs. The libelants appeal, assigning as error that the judgment and decree of the district court are against the law and the evidence, and that the court erred in refusing to decree libelants a lien upon said steamboat Stella Wilds for the use and rent of the life preservers mentioned in the libel.

Geo. Denegre, J. P. Blair, and W. D. Denegre, for appellant.

O. B. Sansum, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge, after having stated the foregoing facts, delivered the opinion of the court.

In the case of John F. Aiken et al. v. Woodward, Wight & Co., recently decided by this court on a similar claim made against the steamer Belle of the Coast for life preservers furnished under the same contract (19 C. C. A. 345, 72 Fed. 1019), it was held that the life preservers were a necessary equipment of the boat, and that for furnishing the same a domestic lien resulted, under article 3237, Rev.

Civ. Code La. In that case, as here, there was some conflict in the testimony as to the number of life preservers actually furnished; but as we held in that case we hold in this,—that the clear preponderance of the proof supports the libel, and that a lien resulted against the steamboat Stella Wilds for the full amount claimed.

The important question presented on this appeal is whether the lien which resulted under the local law, in favor of the libelants, for the supplies furnished, was subsequently divested by reason of the proceedings in liquidation of the Comeaux-Aiken Packet Company, and the sale made therein, as set out in the statement of facts. We think there can be no doubt that the lien granted by the local law must be taken with all the limitations and conditions attached by the lawmakers. This has been specifically held in numerous cases in the United States courts, and from an early day. See The Chusan, 2 Story, 455, Fed. Cas. No. 2,717; The Red Wing, 14 Fed. 869; The City of Salem, 31 Fed. 616; The Edith, 94 U. S. 518; The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140.

Article 3237 of the Revised Civil Code of Louisiana, which gives the lien or privilege which libelants claim, is followed by other sections dealing with the matter. Article 3239 is as follows:

"Creditors having privileges on ships or other vessels may pursue the vessel in possession of any person who has obtained it by virtue of a sale; in this case, however, a distinction must be made between a forced and a voluntary sale."

And article 3240 reads:

"When the sale was a forced one the right of the purchaser to the property becomes irrevocable; he owes only the price of adjudication and over it the creditors exercise their privilege in the order above described."

The question then is whether the sale under which claimant asserts title was a forced sale, within the meaning of the articles above quoted. There are plausible grounds for holding, as claimed by appellant's proctor, that, in view of the fact that the Code of Practice of the state of Louisiana provides for the provisional seizure and sale of ships and vessels to enforce the liens granted by the local law, the forced sale, within the true intent and meaning of the articles above quoted, refers only to a sale made under such quasi admiralty proceedings. See Code Prac. arts. 284 et seq. But we are not required, in this case, to determine this point. For the purposes of this case, it may be taken, as claimed, that "forced sale" and "judicial sale" are identical in Louisiana, and that either term means a sale made under authority and process of law in any legal proceeding had contradictorily with the owner before any court of competent jurisdiction. Article 2616 of the Revised Civil Code of Louisiana says that sales made by authority of law are of two kinds: (1) Those which take place when the property of a debtor has been seized, by order of a court, to be sold for the purpose of paying the creditor; (2) those which are ordered in matters of succession or partition. The facts, as found in this case, show that although there was a sale made by the sheriff, and under an order of court, it was in a proceeding wholly voluntary. Neither the resolution of the stockholders directing the

liquidation of the company, the petition of creditors to the court, nor any finding made by the court, shows a suggestion of insolvency, or of any contradictory proceeding. The proceedings had in the case are unknown to the lex scripta of Louisiana. They are barely permitted in the courts of the state, under a decision of the supreme court of the state in Re Louisiana Savings Bank & Safe-Deposit Co., 35 La. Ann. 196, and solely on the ground that the corporation to be so liquidated consents to the proceeding. In this case liquidators chosen by the corporation took the Stella Wilds, and in a consent proceeding in court, binding only on consenting parties, caused the same to be sold. Although the forms of sale provided by the law of Louisiana in cases of sale on execution were followed, it was wholly voluntary on the part of the parties who effected the sale. There is not a suggestion in the record that the libelants were parties to the proceeding, or had any legal notice of the same. It is clear that they had no notice by reason of any seizure or change of possession of the vessel upon which the law gave them a lien. It cannot be admitted that the sale was either one of the two kinds mentioned in article 2616, supra. It is futile to contend that the insolvent laws of Louisiana give any color of right to the proceedings in question, because not only was there no suggestion of insolvency, but, as decided by the supreme court of the state, corporations cannot avail themselves of the provisions of the act relative to the voluntary surrender of property. Jeffries v. Iron-Works Co., 15 La. Ann. 19.

The learned proctors for appellee claim that the practice finds support in section 688 of the Revised Statutes of Louisiana, providing the manner in which the affairs of a corporation shall be wound up in certain cases. The section is as follows:

"Sec. 688. They shall forfeit their charter for insolvency evidenced by the return of no property found on execution. In such cases it shall be the duty of the district court to convert all the assets, including any unpaid balances due by the stockholders on their shares, into cash and to distribute the same under the direction of the court amongst the parties entitled thereto in the same manner as near as may be, as is done in cases of insolvency of individuals."

The forfeiture of a charter for insolvency evidenced by a return of "No property found," on execution, is an entirely different case from the one at bar, where there was neither judgment, execution, nor finding of insolvency. In our opinion, the sale made by the sheriff of the steamboat Stella Wilds was of no more force than if it had been made by the liquidators without the intervention of the sheriff, and that, treating it as a sale made by the liquidators, it is of no more force than if it had been made directly by the owner. To hold that such a sale should be given the force and effect of a forced sale, within the true intent and meaning of articles 3239 and 3240 of the Civil Code of Louisiana, would be unwarranted and unsupported by either principle or authority. The decree appealed from is reversed, and the cause is remanded to the district court, with instructions to enter a decree in favor of libelants for the amount claimed in the libel, with recognition of lien upon the steamboat Stella Wilds, and for costs.