## Case No. 4,282.

### The EDITH.

[5 Ben. 432;[1] 11 Amer. Law·Reg. (N. S.) 214; 6 N. B. R. 449; 15 Int. Rev. Rec. 24.]

District Court, S. D. New York. Jan., 1872.[2]

Charles Donohue, for Bucknam & Co.

Everett P. Wheeler, for Tyler.

John Sedgwick, assignee in bankruptcy, in pro. per.

BLATCHFORD, District Judge.· There is, in the registry of this court, the sum of $31,-176 82, the net proceeds of the sale of the ship Edith, on a sale made of her on the 8th of May, 1871, under process issued on a decree of this court, in· a suit in rem against her, in admiralty. There are four claimants to portions of this fund. .

D. Freeman Poole, A. Judson Bucknam and John E. Leech, composing the firm of Bucknam & Co., claim to be paid out of such proceeds the sum of $3,597 70, with interest. Their petition alleges, that, in July, 1870, they, being shipwrights, repaired the vessel in the port of New York, she being at the time a domestic vessel, belonging in said port; that, in making such repairs, they furnished labor and materials to said amount; and that such amount, with interest, is still due, and is a lien on the vessel, and was so, by the laws of the state of New York, at the time the materials and labor were furnished. The evidence shows, that· the repairs were made by the order of the master and owners of the vessel, and were made while the vessel was on the water; that the vessel has always been engaged in foreign trade; that the lien was "filed" on the 27th of July, 1870; that, thereafter, under the state law, a warrant of seizure for the amount of the claim was issued out of the supreme court of New York, against the vessel, under which she was seized by the sheriff; that, under the same law, a bond was given and the vessel was discharged from custody and from the warrant; and that a suit on such bond is now pending undetermined in the supreme court of New York.

One Charles Carow, being the owner of the vessel, made and delivered to C. T. Bowring & Co., on the 18th of June, 1869, a mortgage upon the one-half of her, as security for the payment of a promissory note

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court in Case No. 4.283. Decree of the circuit court affirmed ·by the supreme court in 94 U. S. 518.]

for £1,000 sterling and interest, of the same date, made by Carow to the order of C. T. Bowring & Co. Such mortgage was recorded in the New York custom-house on the 23d of June, 1869.

On the 11th of January, 1870, Carow, being the owner of the vessel, made and delivered to Daniel Tyler, to secure an existing indebtedness from Carow to Tyler, a mortgage upon three-fourths of the said vessel. On such mortgage there is due the sum of $55,424 46, with interest from the 1st of July, 1870. This mortgage was recorded in the New York custom-house on the 11th of January, 1870, and a copy of it was afterwards duly filed in the office of the register of the city and county of New York. The mortgage contains a clause whereby the mortgagor "doth promise, covenant and agree, for his heirs, executors and administrators," to and with the mortgagee, "his heirs, executors, administrators and assigns, to warrant and defend the said three-fourths part of said ship Edith, and all the other before mentioned appurtenances, against all and every person and persons whomsoever;" and a clause, that a sale under the mortgage "shall forever be a perpetual bar, both in law and equity, against" the mortgagor, "his executors, administrators and assigns, and all other persons claiming or to claim the premises, or any part thereof, by, from or under them, or either of them."

Carow was, on the 28th of January, 1871, adjudged a bankrupt by this court, on a petition for adjudication filed January 13th, 1871. John Sedgwick was afterwards appointed his assignee.[4]

No objection is made by any of the parties to the payment of the amount due to C. T. Bowring & Co. on the mortgage to them, amounting to $5,776 24.

The claim on the part of Tyler is, that the $31,176 82 should be divided into four equal parts; that the mortgage to C. T. Bowring & Co. should be charged as paid out of one of said four equal parts; and that Tyler should be declared to be entitled to three of said four equal parts. This would distribute the $31,176 82 as follows: to C. T. Bowring & Co., $5,776 24; to the assignee in bankruptcy, $2,017 96; to Tyler, $23,382 62.

The claim on the part of the assignee in bankruptcy is, that, from the $31,176 82 should be paid the Bowring claim, amounting to $5,776 24, and that the balance then left, $25,400 58, should be distributed as follows: one-fourth of it, or $6,350 15, to the assignee in bankruptcy, and the remaining three-fourths, or $19,050 43, to Tyler.

The claims of the various parties were referred to a commissioner to ascertain and report who are entitled to the said surplus and remnants. He has reported that the

$31,176 82 should be divided into two equal parts, of $15,588 41 each; that, taking one of those two parts, namely, $15,588 41, the Bowring mortgage, $5,776 24, should be paid out of it; that the balance thereof, $9,812 17, should be divided into two equal parts, of which one, $4,906 09, should be paid to the assignee in bankruptcy, and the other, $4,906 08, should be paid to Tyler; and that the other half of the $31,176 82, namely, $15,588 41, should also be paid to Tyler. This division distributes the $31,176 82 as follows: to C. T. Bowring & Co., $5,776 24; to the assignee in bankruptcy, $4,906 09; and to Tyler, $20,494 49.

The commissioner has also reported that Bucknam & Co. have no lien upon said surplus and remnants, and no legal right to be paid out of the same, in these proceedings, any portion of their said claim.

To this report Bucknam & Co. except, on the grounds, 1. That the report should have been that Bucknam & Co. are entitled to be paid out of the proceeds of the vessel in court; 2. That the report should have been that Bucknam & Co. have a lien on the fund in court for the amount of their claim; 3. That Bucknam & Co. should be paid out of the fund.

The assignee in bankruptcy excepts to the report on the grounds: 1. That the report allows to him out of the surplus, $4,906 09, whereas it should have allowed to him $6,350 15; 2. That it allows to Tyler $20,494 49, whereas it should have allowed to him only $19,050 43.

Tyler excepts to the report on the grounds: 1. That it reports that the surplus should be divided into two equal parts, and that the Bowring mortgage should be paid out of one such parts; 2. That it reports that the balance of such one of such two equal parts should be equally divided between Tyler and the assignee in bankruptcy; 3. That it does not report that said surplus should be divided into four equal parts, that the Bowring mortgage should be charged as paid out of one of such parts, and that Tyler should be declared to be entitled to three of such parts.

1. As to the claim of Bucknam & Co. It is contended, for them, that their claim was a maritime lien on the vessel, without regard to the state law; that, under the state law, they have a lien on the vessel and her proceeds, which this court can and ought to recognize, by paying the claim out of the proceeds of the sale of the vessel; and that, whether they had a lien or not on the vessel, their claim should be paid out of such proceeds.

It is the recognized law of the courts of the United States, that a maritime lien does not arise on a contract for materials and supplies furnished to a vessel in her home port, even though such contract may be a maritime contract. The Belfast, 7 Wall. [74 U. S.] 624, 645; Leon v. Galceran,

---

[4] [See In re Carow, Case No. 2,426, for proceedings in the bankruptcy court for the purpose of having the ship Edith insured for the benefit of those interested therein.]

11 Wall. [78 U. S.] 185, 192. It is also a principle recognized by those courts. that, in respect to a maritime contract for materials and supplies furnished to a vessel in her home port, a state may lawfully create such liens as it deems proper, not amounting to a regulation of commerce, and may enact, for enforcing such liens, reasonable regulations. The Belfast [supra]; Leon v. Galceran [supra].

In the present case the materials were supplied and the repairs were made to the vessel in her home port, and no maritime lien arose therefor, although the vessel was engaged in foreign trade.

The statute of New York under which a lien is claimed, is the act of April 24, 1862 (Sess. Laws of 1862, c. 482). By the 1st section of that act, this debt, having been contracted by the master and owners of the vessel, within this state, for work done and materials furnished for repairing the vessel, is made a lien on the vessel. to be preferred to all other liens thereon, except mariners' wages. The act provides for filing specifications of the lien, and for the issuing of a warrant to enforce the lien, which is to be a warrant to the sheriff to attach and seize the vessel, to satisfy the claim, if established to be a lien on the vessel. The warrant being executed, the vessel is to be kept by the sheriff. The warrant may be discharged on the giving of a prescribed bond to the prosecuting creditor, conditioned to pay the amount of all claims which shall be established to be due to the person in whose behalf the warrant was issued, and to have been a subsisting lien on the vessel, pursuant to the provisions of the act, at the time of exhibiting the same. If the warrant is thus discharged, no further proceedings against the vessel seized can be had under the act, founded upon any demand secured by such bond. The bond must be prosecuted within three months after its delivery. If, in an action on the bond, it is found that any sum is due to the plaintiff, which was a subsisting lien on the vessel at the time of exhibiting the same. as provided in the act, judgment is to be rendered, that the plaintiff recover the same; but if in such action it is found that no subsisting lien existed in favor of the plaintiff, at the time of exhibiting his claim, judgment is to be rendered against him. If, within a time limited by the act, the creditor who has exhibited his claim has not been satisfied, and the vessel has not been discharged, a warrant is to issue to the sheriff to sell the vessel, to raise a specified amount necessary to satisfy all unsatisfied liens which have been exhibited against the vessel. The proceeds of the sale are, until their distribution, to stand in place of the vessel, and, until such distribution, any person, entitled under the act to enforce a lien against the vessel, may enforce the same against such proceeds. in the same manner as is provided in the act

for enforcing a lien against the vessel herself, and with like effect. On the distribution of such proceeds, the various claims exhibited, which are found to be subsisting liens on the vessel or her proceeds, according to the provisions of the act, are to be paid out of such proceeds, in the order of the delivery of the respective warrants to the sheriff. At any time before final distribution, any claim exhibited may be contested in a manner prescribed. When the amount of all the claims which have been exhibited, and which are found to have been subsisting liens on the vessel, at the time of exhibiting the same, have been finally determined, the proceeds are to be distributed by the court. Uncontested claims, entitled to be paid prior to contested claims, may be paid in the order of their respective priorities, notwithstanding such contest; and uncontested claims may be paid after paying all prior uncontested claims. and reserving enough to pay all prior contested claims. Provision is made for discharging the lien on bond, after specifications of the lien have been filed, although no warrant to enforce the lien has been issued.

In the case of In re Josephine, 39 N. Y. 19, this statute of New York came under consideration, in the court of appeals of New York. In that case, a specification of lien was filed by the creditors against the steamboat, under the act of 1862, for supplies furnished by them at New York to the steamboat. During the period covered by the furnishing of the supplies, the steamboat was enrolled at the custom-house in New York, and was engaged in running between the port of New York and the state of New Jersey. The court of appeals held, that, under the decisions of the supreme court of the United States, in The Moses Taylor, 4 Wall. [71 U. S.] 411, and The Hine v. Trevor, Id. 555, the act of 1862, to the extent in which it authorized proceedings in rem against vessels, for causes of action cognizable in the admiralty, invested the courts of New York with admiralty jurisdiction, and was void, on the ground, that, under the constitution of the United States, congress had in fact, and rightfully, given to the district courts of the United States exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it; and that a proceeding in rem, as used in the admiralty courts, is not a common-law remedy. There can be no doubt, that all state legislation providing for the enforcement of a maritime claim or contract in any other manner than by a common-law remedy, infringes on the exclusive jurisdiction of the federal courts, and violates the constitution of the United States. The contract in the present case, being one for labor and materials furnished by shipwrights in making repairs to a vessel on the water, was a

maritime contract. Whether the contract was or not one which the admiralty court would enforce by a proceeding in rem against the vessel is of no consequence. Brookman v. Hamill, 43 N. Y. 554. So far, therefore, as any proceedings in rem against the Edith were authorized by the act of 1862, or were taken under that act, they were wholly void.

As the seizure of the vessel under the warrant was void, the bond given to obtain the release of the vessel from custody was, also, void. Vose v. Cockcroft, 44 N. Y. 415, 420. It is insisted, however, that the provision of the 1st section of the act of 1862, declaring that every debt of the character therein specified shall be a lien on the vessel, is valid, although the provisions for enforcing the lien against the vessel are void. Even if this be assumed, still, the 2d section of the act provides that the debt shall cease to be a lien at the expiration of six months after the debt was contracted, unless, at the time when the six months shall expire, the vessel shall be absent from the port at which the debt was contracted, in which case the lien shall continue until the expiration of ten days after the vessel shall next return to said port. Such six months, in the present case, expired in January, 1871, and the debt ceased at that time, at farthest, to be a lien, unless the vessel was at that time absent from the port of New York. The fact of such absence of the vessel is one to be shown affirmatively by the creditor, and no such fact is shown in this case.

Bucknam & Co. must, therefore, be regarded merely as general creditors; and the question arises, whether, as such, they can be paid the amount of their claim out of these proceeds, as against the mortgagees and the assignee in bankruptcy. In the case of The Neptune, 3 Knapp, 94, in the privy council, in 1835, on appeal from the high court of admiralty, the vessel had been sold under a decree in a suit for wages. A surplus remained in the registry. A material man claimed to be paid out of it for supplies, and a mortgagee claimed the whole of the surplus. The court of admiralty awarded to the material man, the amount of his claim. On appeal, the privy council reversed the decree. The vessel was a British vessel, and the supplies were furnished in England. Two questions were considered by the court: 1. Whether the material man was entitled to any lien on the proceeds; 2. If not, whether the mortgagee was entitled to such proceeds. It was conceded, that a material man without possession, had no lien on the vessel itself for supplies furnished in England, and could not prosecute his suit in the court of admiralty against the vessel in specie. But a distinction was relied on between proceedings instituted by material men against the ship in specie, and proceedings against surplus proceeds remaining in the registry. The principle upon which the court of admiralty had proceeded was, that, when a vessel had been sold under process from that court, the balance of the proceeds, after satisfying the immediate object of the sale, was held in usum jus habentium; that, by the civil and maritime law, material men have a lien on the vessel and proceeds; that, although the municipal courts of England had restrained proceedings in the court of admiralty, at the suit of material men, against the vessel itself, for supplies furnished in England, no prohibition had ever issued with respect to suits against the proceeds after lawful sale; that the reasons on which the right of material men to arrest the ship in such cases had been repudiated, were not applicable to the arrest of the proceeds after a lawful sale; and that, as the vessel was not bonded, and the proceeds had been allowed to come into the registry, they had become subject to the lien of the material man, from which the vessel in specie would have been exempt. The decision of the privy council was, that material men have no better claim against the proceeds of a vessel in the registry of the court of admiralty, than they have against the vessel. The court confirms this observation of Sir Christopher Robinson in The Maitland, 2 Hagg. Adm. 253, 255. "There does not seem to be any solid distinction between original suits and suits against proceeds, in cases that are opposed; whereas, in cases unopposed, the exercise of a judicial discretion by the court, in permitting bills of this kind to be paid out of unclaimed proceeds, instead of being indefinitely impounded, may be a sound discretion, and capable of being justified to that extent, notwithstanding the general prohibition." The considerations urged in favor of paying the material man were all of them overruled on the ground that he had no lien on the proceeds.

In the case of The New Eagle, 2 W. Rob. Adm. 441, in 1846, there was a contest over proceeds in the registry, between mortgagees of the vessel, and a creditor who claimed to be paid for money advanced for the service of the vessel, in paying seamen's wages. Dr. Lushington rejected the claim of the creditor, and awarded the proceeds to the mortgagees, on the ground, that, after the decision of the privy council in the case of The Neptune, it was impossible to make a distinction between the proceeds and the vessel itself.

In the United States, it is undoubtedly true, that, where proceeds are rightfully in the possession of a court of admiralty, it is an inherent incident to the jurisdiction of the court, to entertain supplemental suits by the parties in interest, to ascertain to whom such proceeds rightfully belong, and to deliver them over to the parties who establish the lawful ownership thereof. Andrews v. Wall. 3 How. [44 U. S.] 568, 573. But it by no means follows, that a general creditor, who has no lien on the thing out of which the proceeds arise, can rightfully claim such proceeds. And, although some decisions in

the United States express an opinion to that effect, yet no one can be found which maintains the view, that a material man having no lien is to be paid out of the proceeds of a vessel, in preference to a mortgagee, or to the assignee in bankruptcy of the person who was the owner of the vessel when the debt was contracted. And that is the present case. There is not enough money to pay the Tyler mortgage in full. As against the assignee in bankruptcy, representing other general creditors of Carow, besides Bucknam & Co., it would be inequitable to permit Bucknam & Co. to obtain a preference in this way over such other general creditors. The proceeds cannot be impounded as belonging to Carow, because the title to them has passed to the assignee in bankruptcy, subject only to specific liens on them.

It is by no means clear, that the proposition, that the lien given by the act of 1862 is valid, although the provisions of that act for enforcing it are void, is a correct one. The proper view would seem to be, that such lien as is given by the act is, in analogy to the meaning and efficacy of a maritime lien, only a privilege to arrest the vessel for the demand, which privilege constitutes, of itself, no incumbrance on the vessel, and becomes such only by virtue of an actual attachment of the vessel. The Globe [Case No. 5,483]. On this view, as any attachment of the vessel under the act is void, and the privilege of arrest amounts to nothing, it would follow, that the lien given by the 1st section of the act can never constitute any incumbrance on the vessel or on her proceeds.

I must, therefore, pronounce against the payment of the claim of Bucknam & Co. out of these proceeds, and disallow their exceptions.

2. As to the proper mode of distributing the $31,176 82 among the mortgagees and the assignee in bankruptcy.

The principle governing the rule of distribution adopted by the commissioner is not stated in his report, but it would seem to be this: Bowring & Co. have a first mortgage, and it is on one-half of the vessel; Tyler has a second mortgage, and it is on three-quarters of the vessel. The Tyler mortgage must be regarded as a first lien on the one-half of the vessel that is not covered by the Bowring mortgage, and, after the Bowring mortgage is paid out of the one-half that is covered by it, the remainder of such one-half must be divided equally between Tyler and the assignee in bankruptcy, on the idea, that the parties to the Tyler mortgage intended, by mortgaging generally three-quarters of the vessel, after one-half of it had already been mortgaged generally, to cover, by the Tyler mortgage, in addition to the one-half not covered by the Bowring mortgage, one-half of what should be left of the one-half covered by the Bowring mortgage, after the satisfaction of the Bowring

mortgage; and that, as, if Carow had himself paid the Bowring mortgage, Tyler would have covered, by his mortgage, the one-half not mortgaged to Bowring, and one-half of the one-half mortgaged to Bowring, so, if the Bowring mortgage is paid out of one-half of the proceeds, Tyler must still cover the one-half not mortgaged to Bowring, and one-half of what is left of the one-half of the proceeds out of which the Bowring mortgage is paid.

Both Tyler and the assignee in bankruptcy contest the principle adopted by the commissioner, and each of them claims a different rule of distribution from that adopted by the commissioner, and neither of them assents to the rule proposed by the other of them. The view of the assignee in bankruptcy is, that he has the vessel; that, out of less than one-quarter of her proceeds, he discharges the Bowring mortgage; that then the entire remainder of the proceeds represents the vessel in the state in which the Tyler mortgage attaches to three-quarters thereof; and that, consequently, three-quarters of such remainder must be given to Tyler, and one-quarter to the assignee in bankruptcy. The view of Tyler is, that Bowring & Co. have a first mortgage on two quarters of the vessel; that, on one of the two quarters covered by the Bowring mortgage, that mortgage is the sole mortgage; that, on the other one of the two quarters covered by the Bowring mortgage Tyler has a second mortgage; that Tyler has a first and the sole mortgage on the two quarters not covered by the Bowring mortgage; and that it is the right of Tyler to have the Bowring mortgage satisfied out of that one of the four·quarters, if sufficient, which is not covered by the Tyler mortgage, so as, if possible, to give to Tyler three-quarters of the entire proceeds.

The considerations urged on the part of Tyler are, that the assignee in bankruptcy can claim only what Carow could have claimed; that, as the one-quarter not covered by the Tyler mortgage is sufficient to pay the Bowring mortgage, no part of the three-quarters which are covered by the Tyler mortgage can be taken away from Tyler and given to the assignee; that such three-quarters are three-quarters of the entire $31,176 82, and not three-quarters merely of the $25,400 58 left after paying the Bowring mortgage out of the $31,176 82; that Carow, by his mortgage to Tyler, expressly agrees to warrant and defend three-fourths of the vessel, that is, three-quarters of the $31,176 82, against all persons, and, therefore, cannot, by himself or his assignee, claim any part of such three-quarters; that, as to him and his assignee, the case must be treated as if no mortgage to Bowring & Co. had ever existed; and that, consequently, as to them, the Bowring mortgage must be wholly paid, if possible, out of the only one-quarter which they can claim to hold as against the mortgage to Tyler, namely, out of the one-quarter of the entire $31,-

176 82. To these considerations it is replied, on the part of the assignee in bankruptcy, that the Tyler mortgage is a mortgage of three-quarters of the vessel, as it stood at the time that mortgage was given, that is, subject to the then existing incumbrance of the Bowring mortgage; that the Tyler mortgage is a mortgage of three undivided quarter parts of the vessel, and the Bowring mortgage one of two undivided quarter parts of the vessel, each mortgage affecting every part of the vessel equally with every other part of her; that the surplus of the two undivided quarters covered by the Bowring mortgage, remaining after satisfying that mortgage, represents, with the other two undivided quarters, the whole vessel, to three-quarters of which aggregate the Tyler mortgage attaches; and that, as the Tyler mortgage was a mortgage on three undivided quarters of the whole, subject to a prior mortgage on two undivided quarters of the whole, the prior mortgage must be first paid out of two quarters of the whole, and the remainder of such two quarters must added to the other two quarters, to represent the whole, to three quarters of which whole the Tyler mortgage attaches.

It seems to me, that a proper application of the equitable principles on which a court of admiralty should proceed, in distributing these proceeds among these two mortgagees and the assignee in bankruptcy, demands, that I should regard the Bowring mortgage as first attaching to two quarters of the proceeds, and the Tyler mortgage as attaching first to the two quarters not covered by the Bowring mortgage, and then as being a second mortgage on one of the two quarters covered by the Bowring mortgage. On this view, as the amount due on the Tyler mortgage is greater than three quarters of the whole proceeds, I think the Bowring mortgage should be regarded as first attaching to two quarters, or $15,588 41 out of the $31,176 82; that such $15,588 41 should be regarded as made up of two equal funds, one of them, $7,794 21, subject to the lien of Bowring & Co.'s mortgage alone, and the other of them, $7,794 21, subject to the lien first of Bowring & Co.'s mortgage, and afterwards of Tyler's mortgage; and that the claim of Bowring & Co., $5,776 24, should be paid out of the $7,794 21 which is not subject to the lien of Tyler's mortgage, leaving the residue, $2,017 96, of that $7,794 21 to be paid to the assignee in bankruptcy, and the full three-quarters, $23,382 62, of the $31,176 82 to be paid to Tyler. This applies to the distribution the familiar principle, that, where there are two funds, and one of them is subject to the lien of one suitor, and the lien of another suitor covers both, the latter suitor will be paid, if possible, out of the fund that is subject only to his own lien. Macl. Merch. Shipp. 601; The Sailor Prince [Case No. 12,219].

Independently of this view, which would properly control the distribution in a case where all the fund was to go to mortgagees, I think that neither Carow nor his assignee can, in view of the warranty of the mortgage to Tyler, properly claim any portion of three-quarters of the $31,176 82.

A decree will be entered distributing the money in accordance with these views, and disposing of the exceptions of Tyler and of the assignee accordingly.