## THE LIBERTY.

(District Court, W. D. Tennessee, W. D.   August 28, 1902.)

No. 1,068.

1. ADMIRALTY—SUIT TO ENFORCE MARITIME LIENS—DISPOSITION OF SURPLUS FUNDS.

Conceding the jurisdiction of a court of admiralty in a suit in rem to enforce liens against a vessel to direct the payment of maritime creditors who have proved their claims, but have been adjudged without lien, from the remnants remaining in the registry of the court after all liens have been satisfied, as against the owner of the vessel, still such jurisdiction should not be exercised where such owner is an insolvent corporation, represented by a receiver appointed by a state court in insolvency proceedings to wind up the affairs of the corporation; but in such case the remnants should be paid over to the receiver, to be distributed between the maritime and other creditors in accordance with the laws of the state. The admiralty court may, however, if the pleadings are sufficient to support judgments in personam against the owner, determine the amount due each of such maritime claimants, and enter judgment therefor.

In Admiralty.

Turley & Turley, Warrinner & Warrinner, Myers & Banks, L. & E. Lehman, R. O. Johnson, Hunsdon Cary, and Sterling Pierson, for libelants.

T. K. Riddick and W. W. Goodwin, for claimant.

HAMMOND, J. This is an application to have the remnants remaining in the registry after the payment of claims allowed as liens on the vessel paid over to the receiver of the insolvent corporation which owned her. The receiver was appointed by the chancery court of Shelby county on a bill there filed to wind up the insolvent corporation according to the statutes of the state in that behalf. It was filed after the libel in this case was filed, and after the seizure of the vessel in admiralty. But after the decree of sale the receiver came into this court by petition, asking leave to be made a party; that he be allowed to contest the claims of all libelants; and that the proceeds of the sale, after the payment of maritime liens, be paid over to him as such receiver. Among the intervening libelants are several creditors, who claimed a lien on the vessel for supplies furnished in her home port at Memphis, under the statute of the state giving such a lien, but whose lien has been defeated because their claims were not filed within the 90 days fixed by the statute for the continuation of such lien. These creditors ask that their debts be paid out of the fund notwithstanding the expiration of their liens, their contention being that their debts are maritime in their origin, and that a court of admiralty has full jurisdiction to decree their payments. The learned counsel for the claimant in this case have relieved the court of the necessity for determining the niceties of questions that would arise on the facts of this case if it were not for the liberal concession that they make to the libelants, who have lost their liens. I quote from the brief of one of them a paragraph as follows:

"It may be conceded at the outset that the court of admiralty, under well-established rules, has jurisdiction to consider the right of claimants where such rights are founded upon contracts maritime in their nature, to be paid out of the proceeds of sale after all maritime liens are satisfied. It may be conceded that this is true whether the claims are predicated upon a maritime contract which never did constitute a lien upon the ship, or whether they depend upon a contract for which a lien originally existed, but which has been lost either by laches under admiralty law, or a lapse of the statutory period where the lien existed by virtue of the state law. So it makes no difference how the claim is presented, whether by original petition in personam, or by petition in rem which has been dismissed because of the loss of the lien, still the court has jurisdiction to consider the claim, and, as between the owner and the claimant, to hear and determine the rights, and to require payment to be made out of remnants according to the right."

This concession is based upon the rulings in cases like that of Leland v. Medora, 2 Woodb. & M. 92, Fed. Cas. No. 8,237, and the approval of that jurisdiction by the supreme court in the case of The Lottawanna, 21 Wall. 558, 582, 22 L. Ed. 654. There is no jurisdiction requiring more careful scrutiny than this of a court of admiralty to avoid a usurpation of the jurisdiction belonging exclusively to courts of law and equity, and with which a court of admiralty cannot possibly deal. Indeed, the supreme court says in the Lottawanna Case, while declaring the jurisdiction to exist, that, "if a case should be so complicated as to require the interposition of a court of equity, the district court could refuse to act, and refer the parties to a more competent tribunal." That is precisely what happens in this case. It is conceded to counsel for the libelants, who have lost their liens under the statute, and who have maritime claims, that as against the owner of the vessel the court here would give them a judgment for the amount due each of them, and satisfy their claims pro rata or in full, as the case may be, out of these remnants. But the court here does not wish to be bound wholly by that concession as a precedent, for it is made without further discrimination, because counsel for the receiver so liberally grant it for the purposes of this case. The trouble here is that it is not the owner of the vessel against whom this relief is asked. The case is complicated by the fact that the owner is a corporation under the laws of the state of Tennessee, which has become insolvent, and is being proceeded against in the courts of Tennessee under the statutes of that state for winding up insolvent corporations, and it is the receiver of this insolvent corporation who insists that the court of equity appointing him shall distribute these remnants according to laws of Tennessee for winding up insolvent corporations. Under those laws the assets of an insolvent corporation are a trust fund for an equal distribution when there are no liens upon those assets. It is plain that a court of admiralty cannot exercise that jurisdiction and enforce that trust. It is equally plain that a court of admiralty cannot, because it happens to have jurisdiction of a part of the assets of the insolvent corporation by reason of its rightful seizure of one of the vessels of the corporation for the purpose of enforcing maritime liens, create priorities, preferences, or liens to the exclusion of other creditors not before the admiralty court, and who cannot come there to receive their share of the proceeds. Those maritime creditors who have lost their maritime liens under the statute have under the in-

solvent corporation laws of Tennessee no greater or other right to be paid out of the assets than have the common-law creditors. If we should pay the maritime creditors here out of these remnants, we would, in effect, give them a lien over the common-law creditors to which they are not entitled under any law, common or maritime, nor under the statute of Tennessee; or at least we should be giving them a preference over the common-law creditors, to which they are not entitled; or, unless we should undertake to ascertain their pro rata share along with the common-law creditors, we might pay them more than they are entitled to receive. It is obvious that this court cannot protect the statutory and equitable right of equal distribution among all the creditors of this insolvent corporation without usurping the jurisdiction that belongs to the court of equity operating under the Tennessee statute for winding up insolvent corporations. It is the very case indicated by the supreme court in the Lottawanna Case where the district court should refuse to act, and refer the parties to a more competent tribunal. It may be well enough to remark that the case is not of that kind where a court, having obtained jurisdiction for one purpose, will keep it for all purposes, to avoid further litigation and a multiplicity of suits If that principle ever applies to a court of admiralty so as to authorize it to exercise common-law or equitable jurisdiction, it surely does not authorize the incongruous jurisdiction which would be found in operation if a court of admiralty should undertake to wind up an insolvent corporation under the statute of a state, either wholly or only as to a part of the assets of the corporation which happens to be found in the court of admiralty as remnants. The case of The Edith, 5 Ben. 432, Fed. Cas. No. 4,282, affirmed 11 Blatchf. 451, Fed. Cas. No. 4,283, and again affirmed by the supreme court, 94 U. S. 518, 24 L. Ed. 167, fully sustains the ruling we here make, if it does not go further, and deny the right of any one to be paid out of the remnants in admiralty, even against the owner, unless he has a lien. It is not necessary to decide that question in this case, since counsel for the receiver concedes that it may be done as above stated.

A difficulty I have had in dealing with this case in this view of it relates to the right of the libelants who have lost their liens under the state statutes to have this court to declare, nevertheless, the amount due to each of them. They have a maritime claim, and this court, upon a proceeding in personam, might give them a judgment in personam for what is due to each. This is not a proceeding in personam, and these intervening libelants have not proceeded in personam. Whether their libels intervening in a proceeding in rem may be turned into libels in personam to support a judgment of that character may be doubtful, but they certainly will support a petition to be paid out of the remnants, and, if that jurisdiction exist, certainly this court has a right to determine the amount that is due in some form of action; and, since the receiver takes no objection to these pleadings on the score of their insufficiency to support a declaration of the amount that is due, I have concluded to give a judgment here against the claimant, the receiver in this case, for the amount that is due to each of those libelants, so that they will be saved the expense of proving their claims again in the insolvency court, to which they must resort to receive their pro

542 119 FEDERAL REPORTER.

rata share of this fund, unless that court shall require otherwise. The clerk will therefore enter a decree declaring the amount found due each of the intervening libelants according to his report; that is to say, for those libelants who have lost their liens under the state statute by failing to file them within the 90 days required by law. The remnants will be paid to the receiver.

Ordered accordingly.